<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WILLIAM BROWN,                        :
                                      :
            Petitioner,      :      Civil No.  10-2971(FSH)
                                      :
        v.                    :      **OPINION**
                                      :
MICHELLE R. RICCI, et al.,   :
                                      :
            Respondents.     :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>          Counsel for Respondents
William Brown                Paula Cristina Jordao
288218                       Morris County Prosecutor's Office
New Jersey State Prison      Administration & Records Building
P.O. Box 861                 Morristown, NJ 07963
Trenton, NJ 08625


**HOCHBERG**, District Judge

        Petitioner William Brown ("Brown"), a prisoner confined at

New Jersey State Prison in Trenton, New Jersey, submitted a

petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  The respondents are Michelle R. Ricci and Paula T. Dow.

        For the reasons stated herein, the Petition must be denied.[1]

_____

        [1]Petitioner has not submitted any reply to Responents'
Answer.  Pursuant to 28 U.S.C. § 2248, "The allegations of a
return to the writ of habeas corpus or of an answer to an order
to show cause in a habeas corpus proceeding, if not traversed,
shall be accepted as true except to the extent that the judge
finds from the evidence that they are not true."

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[2]   *See* Respondents' Exhibit ("RE") B3.

> Defendant and his former girlfriend Tanya Hairston ended their two-year relationship several months before the fatal incident.  It had been a stormy relationship marked with bitter charges of infidelity.  They argued frequently which eventually led to their breakup.  Tanya's family sought to prevent defendant from seeing her and defendant believed her brothers were out to get him.  On November 4, 1994, defendant had visited Tanya earlier and left, but returned with two men.  Defendant had recruited the two men to stand guard outside of Tanya's apartment while he was inside. After defendant ingested some cocaine, he began to quarrel with Tanya.  Defendant began to look for lost train tickets that he needed to travel to New York.  He was unable to find them and became angry and cursed at Tanya.  In response, she threw an aerosol can which grazed defendant's shoulders. The argument escalated into violence.  Defendant charged at Tanya, wrapped his hands around her neck and choked her.  He also inflicted incapacitating internal injuries.  Tanya's body went limp.  Defendant left decedent's apartment and took a taxi cab to Madison and then a bus to New York City.

> Later, he telephoned his mother from New York and learned that Tanya was dead.  Defendant tried to gain admittance to a veteran's administration hospital in Manhattan.  While there, he revealed to the authorities that he killed Tanya. He was arrested and gave a statement to the Morristown Police detailing the events.

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

The medical examiner performed an autopsy on Tanya.  He found she sustained a two and one-half inch laceration to her liver from a blunt force trauma, causing massive internal bleeding.  In addition, her hyoid bone in her neck was fractured and there were lacerations on her neck.  These injuries were consistent with manual strangulation.  The cause of death was found to be blunt force trauma to the abdomen and mechanical asphyxia due to strangulation.  The State also produced several witnesses who testified about Tanya's character for non-violence and peacefulness.

Defendant presented the testimony of Doctor Arnaldo Apolito, a psychiatrist, who testified that defendant was suffering from a substance-induced psychotic disorder at the time of the murder, and was thus unable to appreciate the nature of his behavior and the wrongfulness of his conduct.

Defendant's daughter testified that the defendant and Tanya argued frequently and that Tanya would break dishes by throwing them around the apartment.  She claimed that on one occasion Tanya threw a remote control at defendant and on another occasion, Tanya tried to prevent defendant from leaving the residence by pushing him away from the door.  She also testified that Tanya once confronted defendant's former girlfriend and began to fight with her.

Defendant testified on his own behalf.  He acknowledged he frequently quarreled with Tanya.  He testified he would leave the residence whenever Tanya became upset.  Defendant admitted he strangled Tanya until she lay prostrate on the floor and that he left the apartment not knowing if she was breathing.

*See* Appellate Division Opinion, RE B3.

B.   Procedural History

Petitioner was convicted of first degree murder (N.J.S.A. 2C:11-3a) on October 3, 1996.  Petitioner's motion for a new trial was denied on January 31, 1997 and he was sentenced to a life term with a 30 year parole disqualifier.  The Appellate Division affirmed the trial conviction on July 1, 1999 and the Supreme Court of New Jersey denied certification on November 9,

1999.  The petition for post-conviction relief ("PCR") was denied by order dated March 13, 2007.  The Appellate Division affirmed on August 3, 2009 and the Supreme Court of New Jersey denied certification on December 1, 2009.

Petitioner filed his habeas petition on June 11, 2010.

C.  Petitioner's Claims

Petitioner cites thirteen grounds for relief in his habeas petition:

1.  "Since the trial court erroneously failed to address the jury question pertaining to whether 'provocation mean[s] an immediate threat or can provocation be over a period of time.' Defendant's murder conviction must be reversed."

2.  "Since the sequential 'acquit first' jury instructions and verdict sheet erroneously told the jury to deliberate on passion/provocation manslaughter only after finding defendant not guilty of murder, defendant's own murder conviction must be reversed."

3.  "At the very least, defendant's sentence to a lifetime of imprisonment is excessive."

4.  "The defendant'd [sic] claims are not barred by the provisions of R. 3:22 as they assert constitutional issues arising under the state and federeal [sic] constitution."

5.  "The Petitioner has provided prima facie proof that he suffered ineffective assistance of trial counsel."

6.  "The Petitioner has provided prima facie proof that he suffered ineffective assistance of appellate counsel."

7.  "Trial counsel's failure to adequately prepare and exercise normal customary skills in establishing defendant's innocence, and the lack of adequate client consultation counsel's resulted in gross ignorance of defendant's specific instructions for defense tatics [sic], so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result; in violation of defendant's right to a fundamental

4

fair trial with effective representation. U.S.C.A. Const. Amend. 5, 6, & 14; N.J. Const. Art. 1 ¶ 12."

8.    "The trial court's charge to the jury erroneously and impermissibly placed the burden of proof onto petitioner William Brown, depriving him of a fair trial."

9.    "The trial court failed to instruct the jurors that the insanity defense would apply if Petitioner did not know that his conduct was normally wrong deprived Petitioner of the right to due process of law and a fair trial. U.S. Const. Amend. V, VI, XIV, N.J. Const. (1947) Art. 1 ¶ 9, 10."

10.   "Prosecutorial misconduct deprived William Brown of due process rights warranting a reversal of defendant's conviction; in violation of defendant's right to a fundamentally fair trial pursuant to his constitutional rights. U.S.C.A. Const. Amend. 5th, 6th, & 14th; N.J. Const. Art. 1 ¶ 7, 8, & 10."

11.   "The defendant's 14th Amendment rights giving him equal protection under the law were violated when he, a African American was subjected to a discriminatory profiling and vindictive selection for prosecution. And the degree of the intrusion violated [sic]."

12.   "Defendant's right to be indicted by an independent and informed grand jury in violation of the Sixth Amendment to the United States Constitution and Art. 1 ¶ 8 of the N.J. Constitution."

13.   "William Brown was denied effective assistance of appellate counsel."

(Petition, ¶12).

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of
the United States.

With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the

adjudication of the claim

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determinated by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II).  A state court decision "involve[s] an

unreasonable application" of federal law "if the state court

identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court

either unreasonably extends a legal principle from [the Supreme

Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court

does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).]

## III. DISCUSSION

As Respondents note in their Answer, it appears that Petitioner did not fully exhaust a portion of his claims. Even though Petitioner's claims may not have not been fully exhausted

8

in the state courts, this Court finds the claims are meritless none-the-less.  Accordingly, pursuant to 28 U.S.C. § 2254(b)(2), this Court will exercise its discretion to deny these claims on the merits, rather than stay the proceeding or dismiss for failure to exhaust.

A.   Claims Regarding Jury Charge (Grounds 1, 2, 8, 9)

Petitioner asserts claims that the trial court instructions were deficient as to the passion/provocation manslaughter instructions, the "acquit first" jury instructions and verdict sheet, and the insanity instructions.

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where

9

"the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

      With regard to the passion/provocation manslaughter charge
and Petitioner's argument that the trial court failed to answer
jury questions regarding the meaning of provocation, the
Appellate Division, citing state law to evaluate this issue, held
that they were satisfied that the judge responded satisfactorily
to the jury questions.  Further, the court held that even though
the trial court did not refer to testimony regarding the victim's
capacity for violence, no error existed.  *See* Appellate Division
Opinion, RE B3.

      With regard to the assertion that "the trial court's
instruction and the verdict sheet directing that they consider
the murder charge before considering passion/provocation
manslaughter only served to confuse the jury," the Appellate
Court, again citing state law, noted that:

> Contrary to defendant's contention, the record is barren of
> any indication that the jury was instructed to acquit
> defendant first of murder before considering whether
> defendant should be convicted of passion/provocation
> manslaughter.  Further, the verdict sheet reiterated the
> instruction given at trial that defendant cannot be found
> guilty of murder if he acted in the heat of passion or upon
> reasonable provocation.
>
> [...]
>
> The charge and verdict sheet clearly articulated to the jury
> that it was to specifically consider whether defendant
> committed the killing of decedent out of passion or
> provocation before the jury could convict defendant of
> murder.  We find no error, let alone plain error.

11

*See* Appellate Division Opinion, RE B3.

   With regard to the assertion that the insanity instructions erroneously shifted the burden upon the defendant, nothing in the challenged instructions operated to lift the government's burden of proof on an essential element of the charged crimes.  The Appellate Court rejected Petitioner's argument that the jury was confused by the inclusion of aggravated/reckless manslaughter, insanity, diminished capacity, and intoxication, stating that:

> Defendant presented an insanity defense and produced testimony of a psychiatrist who opined that defendant was insane at the time of the murder.  There was a long course of treatment at V.A. hospitals for a variety of psychological and drug addiction disorders.  Clearly, the evidence presented justified the instructions given to the jury.

*See* Appellate Division Opinion, RE B3.

   Here, the challenged jury instructions correctly conveyed the governing state law principles to the jury.  Petitioner has not demonstrated that his entire trial and conviction was so prejudiced by the charge as to violate the principles of fundamental fairness and due process.  There was ample evidence against Petitioner to justify his conviction, including his own admission that he strangled the victim.  *See* Appellate Division Opinion, RE B3.  The conviction was neither fundamentally unfair, nor violated due process.

   Furthermore, the decision of the Appellate Division was neither contrary to, nor an unreasonable application of, clearly

established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. That the jury chose to believe the State's version over Defendant's version of the case does not render the trial unfair. No "substantial and injurious effect" exists.  Petitioner is not entitled to relief on these grounds.

B.   Claim Regarding Excessive Sentence (Ground 3)

In Ground Three, Petitioner asserts that his sentence to a lifetime of imprisonment is excessive and that "[t]he trial court erroneously assumed, that the sentencing code mandated a life sentence, which is incorrect."

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538

U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has
identified three factors that may be relevant to a determination
of whether a sentence is so disproportionate to the crime
committed that it violates the Eighth Amendment:  "(1) the
gravity of the offense and the harshness of the penalty; (ii) the
sentences imposed on other criminals in the same jurisdiction;
and (iii) the sentences imposed for commission of the same crime
in other jurisdictions."  Solem v. Helm, 463 U.S. 277, 292
(1983).  Additionally, Justice Kennedy has explained that Solem
does not mandate comparative analysis within and between
jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05
(Kennedy, J., concurring in part and concurring in judgment), and
he has identified four principles of proportionality review--"the
primacy of the legislature, the variety of legitimate penological
schemes, the nature of our federal system, and the requirement
that proportionality review be guided by objective factors"--that
"inform the final one: The Eighth Amendment does not require
strict proportionality between crime and sentence.  Rather, it
forbids only extreme sentences that are 'grossly
disproportionate' to the crime,"  id. at 1001 (citation omitted)
quoted with approval in Ewing, 538 U.S. at 23.

     As to this issue, which Petitioner raised on direct appeal,
the Appellate Division held that:

     "...[I]n sentencing defendant to life imprisonment, the
     trial court found the aggravating factors of the risk that

                              14

defendant would commit another offense, N.J.S.A. 2C:44-1a(3); the need for deterrence, N.J.S.A. 2C:44-1a(9); and the extent of defendant's prior criminal record, N.J.S.A. 2C:44-1a(6).  The trial court found no mitigating factors and concluded a term of life imprisonment was appropriate.

Contrary to Defendant's contention, the record is barren of any indication that the trial court understood that murder carries with it a mandatory sentence of life imprisonment. As noted, the range of sentence under N.J.S.A. 2C:44-3b is between thirty years and life imprisonment.  The trial court chose life imprisonment after balancing aggravating and mitigating factors.

We are satisfied that the sentence imposed is neither manifestly excessive or unduly punitive.  It does not represent a miscarriage of justice nor does it shock the judicial conscience.  State v. Jarbath, 114 N.J. 394, 401 (1989)."

*See* Appellate Division Opinion, RE B3.

Here, Petitioner was convicted of first degree murder. His challenge to the state court's sentencing is not reviewable in this Court; he has presented no cogent argument why his sentence is unconstitutional.  This Court finds that Petitioner's sentence is not "grossly disproportionate" to the crime he committed.

The decision of the Appellate Division was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on this ground.

C.   Claims Regarding Ineffective Assistance of Counsel (Grounds 4, 5,6, 7, 13)

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.
The right to counsel is "the right to <u>effective</u> assistance of
counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's performance
fell below an objective standard of reasonable professional
assistance and that there is a reasonable probability that, but
for counsel's unprofessional errors, the outcome would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 694
(1984).  A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome."  Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687.  "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

17

As noted by the Appellate Division, the trial court judge addressed the issue of Petitioner's claims regarding the performance of trial and appellate counsel:

> In his decision, [the trial court judge] acknowledged the information contained in defendant's supporting documentation but noted that defendant did not specify any of his claims.  Rather, defendant made bare bones assertions of trial counsel's failures.  Further, the judge observed that defendant did not specify how the information obtained or the testimony would have "affected the outcome of this case."  He found that in reading the trial transcripts, it was "clear to [the trial court judge] that the defense attorney was prepared."
>
> [...]
>
> [The trial court judge] stated that because defendant's sentence was "as serious as it comes" he reviewed defendant's PCR claim "very closely."  The judge found nothing before him that would indicate that "additional contact with Appellate counsel" and trial counsel would have affected the outcome of the case.

*See* Appellate Division Opinion, RE B14.

This Court has reviewed the transcripts.  Petitioner's claims with respect to the performance of trial counsel and appellate counsel are vague and conclusory.  As there has been no constitutional error shown, there was no ineffective assistance of counsel either at the trial or appellate level.  Additionally, even if counsel had performed deficiently, which this Court does not find, Petitioner has not shown that the result of trial or appeal would have been different.  There was ample evidence to convict.  Petitioner is not entitled to relief on these grounds.

E.    Claims Regarding Prosecutorial Misconduct (Grounds 10, 12)

In Grounds Ten and Twelve, Petitioner asserts vaguely that he was deprived of constitutional rights due to prosecutorial misconduct.

The Appellate Division observed that during PCR, the trial court judge "noted that defendant did not state 'anything that [he could] look to as being the basis for any alleged prosecutorial misconduct.'" *See* Appellate Division Opinion, RE B14.

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

19

Here, the record does not reflect any actions whatsoever by the prosecutor that would even suggest a constitutional violation.  Petitioner is not entitled to relief on these grounds.

F.    Claim Regarding Racial Bias (Ground 11)

In Ground Eleven, Petitioner asserts that, as an African American, his 14th Amendment rights were violated when he was "subjected to a discriminatory profiling and vindictive selection for prosecution."

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).

The trial judge addressed this issue through oral opinion on March 8, 2007 stating that Petitioner had waived his right to raise the issue of racial bias.  While not addressing this issue directly, the Appellate Division stated that "[i]n his carefully crafted opinion, [the trial court judge] addressed each issue raised by defendant in depth.  Accordingly, we affirm for the reasons set forth in [the trial judge's] thorough and thoughtful

oral opinion of March 8, 2007." *See* Appellate Division Opinion, RE B14.

Here, Petitioner has made only a bare allegation that African-Americans are subjected to discriminatory profiling and vindictive selection for prosecution. He has failed to present any evidence of an Equal Protection violation. Petitioner is not entitled to relief on this ground.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of any constitutional right. No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be

denied.   An appropriate order follows.


<u>s/ Faith S. Hochberg</u>
FAITH S. HOCHBERG
United States District Judge

Dated: April 27, 2011

22